## Case No. 13,374.

### STEPHENSON v. JACKSON.

[2 Hughes, 204;[1] 9 N. B. R. (1874) 255.]

Circuit Court, D. West Virginia.

BANKRUPTCY—PARTNERSHIP—JOINT AND SEPARATE ASSETS.

Where a creditor holds the note of a copartnership indorsed by one of its members, he may prove in bankruptcy against the copartnership fund and also against the separate estate of the copartner indorsing, and he may elect out of which fund he may be paid. Arguendo, he may collect dividends from both funds.

[In review of the action of the district court of the United States for the district of West Virginia.]

In bankruptcy.

BOND, Circuit Judge. This is an appeal from the district court in bankruptcy to the supervisory jurisdiction of the circuit court, under the second section of the bankrupt act [of 1867 (14 Stat. 518)]. George A. Wells & Co., merchants, of which firm James Cook was a member, were adjudged bankrupts, upon the petition of creditors, in August, 1869, and an assignee was appointed, who has collected and has in hand the assets of the said firm. On the 7th day of April, 1870, James A. Stephenson filed his petition in the bankrupt court, alleging that on the 28th day of August, 1868, the said George A. Wells & Co. made their promissory note to James Cook for the sum of six thousand nine hundred and six dollars and thirty-five cents, payable six months after date, and that the said James Cook, before said note became due, for a valuable consideration indorsed the said note to him, Stephenson, "Protest waived, James Cook," which said note was not paid at maturity; that he has proved his said debt against the said firm of George A. Wells & Co., and also against the individual estate of James Cook; that having two funds to elect from out of which the said debt shall be paid, he elected to take the individual estate of James Cook. He alleged, moreover, that there were conflicting claims of other creditors of said firm, and the individual members thereof, claims conflicting not only as to priority, but also as to what fund was applicable for their payment. He asked, therefore, that the court refer the matter to a commissioner to report the debts and their priorities, and the funds applicable to the payment of each. This was done, and the commissioner reported that the claim of Stephenson was a valid one, and that he was entitled to be paid as he had elected to be, out of the separate es-

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]

tate of James Cook. To this report certain of the creditors excepted, alleging "that the debt due Stephenson was a firm debt, and was so received by Stephenson, and no engagement on the part of Cook to see it paid will alter his liability, except as attaches to his as an indorser of the paper of the firm." The proof chiefly in argument relied on, that Stephenson took his note, intending to charge the firm of George A. Wells & Co. only, is that that firm were the makers of the note, and that he knew that James Cook was a member of that firm.

These facts are not sufficient to sustain the inference drawn from them, and even were the inference not repelled by direct proof to the contrary, they do not even tend to show that Stephenson trusted the firm alone. It is a daily occurrence that individual members of partnerships indorse the notes of their firm to give the individual security of their individual property to the holders of the firm paper, and that was the fact in this case. I am at a loss to know, and have not been able to learn from the argument, why an indorsee is not entitled to prove his debt against the estate of any prior indorser of an unpaid promissory note, even if that indorser be a member of the firm which made the note. That a person is a member of a firm does not preclude him from acting in his individual capacity even in behalf of the firm to which he belongs, and if he indorses the note of his firm he stands in the same relation to all subsequent holders and to the makers also as if he were a stranger. Now, if the makers of this note were not in bankruptcy, unquestionably Stephenson could sue and recover from the indorser, Cook, and levy execution upon and make his debt out of the separate estate of Cook, and leave him to recover from the maker. How does the fact of bankruptcy of the parties alter the liability of either the indorser or the makers to the holder? The bankrupt law undertakes to make distribution of the assets of the bankrupt according to the rights and priorities of creditors existing at the time of bankruptcy. It does not alter or change those rights and priorities, and Stephenson, if he could sue and recover his debt out of the separate estate of Cook prior to this bankruptcy, can do so now out of his separate estate in the hands of the assignee. It is contended here, though the point was not raised below, that the liability of Cook as indorser never became fixed, because there is no proof offered of demand upon and non-payment by the makers. It would not be permitted to raise this question here for the first time without giving the petitioner an opportunity to offer proof of the fact. The exception to the commissioner's report states no such objection, and even if it did, I see no force in it. Cook waived protest, and must be held therefor. Now, to admit that a protest would prove, and by the statute law of this state a protest is

prima facie evidence of demand and non-payment by the makers, it is not necessary to elect out of which fund he would take his debt. He asks so to do, and cannot complain if he be permitted to do as he asks. I think the district court erred in its order sustaining the exception to the report of the commissioner, and will sign an order confirming that report in this respect, and directing the assignee to allow Stephenson to take his debt out of the individual assets of Cook.